**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CUBAN ELECTRIC CO.,**<br>**Plaintiff,**<br>**v.**<br>**UNIÓN ELÉCTRICA, et al.,**<br>**Defendants.** | **Civil Action No. 26-2675 (JDB)** |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cuban Electric Company moves for permission to rely on alternative measures to serve its complaint on two instrumentalities of Cuba, asserting claims under the Cuban Liberty and Democratic Solidarity Act of 1996 (the "Helms-Burton Act"). See Pl.'s Mot. for Alternative Service Under 28 U.S.C. § 1608(b)(3)(C) ("Pl.'s Mot.") [ECF No. 8].

Federal Rule of Civil Procedure 4(j) provides that instrumentalities of foreign states "must be served in accordance with 28 U.S.C. § 1608," the service provision of the Foreign Sovereign Immunities Act of 1976 ("FSIA"). Section 1608(b) "set[s] forth a hierarchical regime for the appropriate methods of service" on an agency or instrumentality of a foreign state. Est. of Hartwick v. Islamic Republic of Iran, Civ. A. No. 18-1612, 2021 WL 6805391, at *2 (D.D.C. Oct. 1, 2021).

If a "special arrangement for service between the plaintiff and the agency or instrumentality" exists, the plaintiff must serve the agency or instrumentality in accordance with that arrangement. 28 U.S.C. § 1608(b)(1). Where no special arrangement exists, two further options are permissible. Plaintiffs may serve the instrumentality's officer, managing or general agent, or any other agent authorized to receive service of process in the United States, or may

effectuate service "in accordance with an applicable international convention on service of judicial documents." Id. § 1608(b)(2).

Only where service cannot be made through any of the foregoing methods may plaintiffs serve an agency or instrumentality of a foreign state via one of three pathways of last resort: (A) "as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request"; (B) "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality"; or (C) "as directed by order of the court consistent with the law of the place where service is to be made." Id. § 1608(b)(3). For each of these options, service must be "reasonably calculated to give actual notice" and plaintiffs must deliver copies of the summons and complaint in both English and the official language of the foreign state. Id.

No special arrangement for service exists between plaintiff and defendants here, see Decl. of M. J. Baratz ¶ 6 [ECF No. 8-1], so service under § 1608(b)(1) of the FSIA is inapplicable. Similarly, service pursuant to § 1608(b)(2) is not required because defendants have no agent authorized to receive service of process in the United States and Cuba is not a party to any international convention on service of judicial documents. See id. ¶¶ 7–8. Plaintiff is also unable to effectuate service by seeking direction from the Cuban authorities through a letter rogatory or request, as Cuba has criminalized aiding anyone raising a claim under the Helms-Burton Act. See id. ¶¶ 9–11. Furthermore, none of USPS, DHL, Federal Express, or UPS currently delivers mail to Cuba, so plaintiff is unable to serve defendants through mail requiring a signed receipt. See id. ¶ 18.

Given plaintiff's limited options, it has requested that the Court authorize service pursuant to § 1608(b)(3)(C). Specifically, plaintiff seeks the Court's permission to effectuate service by

delivering a copy of the summons and complaint, along with a translation of each into Spanish, "by a form of mail requiring a signed receipt, to be addressed and dispatched by the Clerk of Court to Defendants, care of the Embassy of Cuba" in Washington, D.C. Pl.'s Mot. at 1. As noted, the Court may authorize this method of service only if it is "consistent with the law of the place where service is to be made" and "reasonably calculated to give actual notice" to defendants. 28 U.S.C. § 1608(b)(3).

Plaintiff's proposal does not meet either requirement. First, mailing service papers requiring a signed receipt to the Cuban Embassy in Washington, D.C. is not consistent with the law of the United States, the place where service would be made.[1] Article 22(1) of the Vienna Convention on Diplomatic Relations, a treaty the United States ratified in 1972, provides that "[t]he premises of the [diplomatic] mission shall be inviolable." Republic of Sudan v. Harrison, 587 U.S. 1, 16 (2019); see Usoyan v. Republic of Turkey, 6 F.4th 31, 41 (D.C. Cir. 2021). Courts accord "great weight" to "the Executive Branch's interpretation of a treaty." Harrison, 587 U.S. at 16. And "[s]ince at least 1974, the State Department has taken the position that Article 22(1)'s principle of inviolability precludes serving a foreign state by mailing process to the foreign state's embassy in the United States." Id. at 16–17. Plaintiff's proposed service method would violate the Vienna Convention's principle of mission inviolability, as long understood by the Executive Branch, because it would entail serving a foreign instrumentality "by mailing process to the foreign state's embassy in the United States." Id. at 17. That plaintiff seeks to effectuate service on foreign instrumentalities, rather than on a foreign state, does not make this service method any less an

[1] Plaintiff states that Cuba is the place where service would be made. Pl.'s Mot. at 9. But the Cuban Embassy in Washington, D.C. is on U.S. territory, so the relevant question is whether the proposed service method complies with U.S. law. See Jordan J. Paust, Non-Extraterritoriality of "Special Territorial Jurisdiction" of the United States: Forgotten History and the Errors of Erdos, 24 Yale J. Int'l L. 305, 312 (1999) ("[U]nder both domestic U.S. and international law … , a U.S. embassy in foreign state territory is not U.S. territory and is not within the territorial jurisdiction of the United States, any more than a foreign embassy within the United States is foreign territory or within the territorial jurisdiction of a foreign state.").

intrusion on the premises of the Cuban Embassy. Cf. Autotech Techs. LP v. Integral Rsch. & Dev. Corp., 499 F.3d 737, 748 (7th Cir. 2007) (explaining that service on a foreign-state instrumentality "through an embassy is expressly banned" by the Vienna Convention).

Plaintiff responds that "[m]ailing service papers to an embassy does not violate … the Vienna Convention … so long as a plaintiff does not ask the Court to deem the Embassy, the Ambassador, or any consular officer an agent for service." Pl.'s Suppl. Mem. at 3 [ECF No. 9]. Plaintiff claims that it merely seeks to treat the Cuban Embassy as a "postal notice conduit," not to "compel[] a diplomatic place or officer to become an agent for service." Id. The Court is unpersuaded. Plaintiff proposes to effectuate service on foreign-state instrumentalities by mailing service papers requiring a signed receipt to the Cuban Embassy. This procedure functionally makes the embassy an agent for service and thus violates the Vienna Convention on plaintiff's own reading.

Plaintiff's caselaw authorizing service on an embassy or consulate does not suggest that the proposed service method complies with the Vienna Convention. In Olive Group FZ-LLC v. Afghanistan Civil Aviation Authority, the court permitted the petitioner to send service papers "via express mail to the Consulate General of Afghanistan in Dubai, United Arab Emirates." Civ. A. No. 24-2170, 2025 WL 1662961, at *4 (D.D.C. June 12, 2025). The court did not address service on a foreign embassy in the United States, and its order authorizing the petitioner's service method contained no legal analysis. See Order Granting Pet'r's Second Mot. for Alternative Service, Olive Grp. FZ-LLC v. Afg. Civ. Aviation Auth., Civ. A. No. 24-2170 (D.D.C. Oct. 30, 2024), ECF No. 8. In Janvey v. Libyan Investment Authority, the district court ordered the plaintiff "to attempt service via mail[,] fax, and email on the Libyan Ambassador to the United States or his designee through the Libyan Embassy in Washington, D.C." Civ. A. No. 11-1177, 2011 WL 13299660, at

*6 (N.D. Tex. June 16, 2011). But the court did not analyze the Vienna Convention's application there.

Finally, plaintiff has not demonstrated that its proposed service method is "reasonably calculated to give actual notice" to both defendants. 28 U.S.C. § 1608(b)(3). Plaintiff asserts that delivering mail to the Cuban Embassy meets this standard because Unión Eléctrica "is wholly owned by Cuba" and because Energas S.A. is one-third owned by Unión Eléctrica and one-third owned by "Cuba's state-owned oil company." Pl.'s Mot. at 7. But plaintiff does not explain how mailing service papers to the embassy in Washington, D.C. is reasonably calculated to provide actual notice to two entities that are based in Havana, Cuba, are wholly or partly owned by Cuba or by its state-owned companies, and perform completely different functions than the embassy does. See Compl. ¶¶ 20–21 [ECF No. 1] (alleging that Unión Eléctrica is "the Cuban state monopoly for power generation" and Energas S.A. "processes raw natural gas" and "generates electricity for sale to the national grid"). On the current record, then, the Court cannot conclude that plaintiff's proposal satisfies the reasonably-calculated requirement.

Upon consideration of [8] plaintiff's motion for alternative service, [9] plaintiff's supplemental memorandum, and the entire record herein, for the foregoing reasons, it is hereby **ORDERED** that plaintiff's motion is **DENIED**. If plaintiff wishes to propose a different service method, it may do so in a new motion.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: September 25, 2026